**118** CUMBERLAND.

The Trustees of the New Gloucester School Fund *v.* William Bradbury.

## The Trustees of the NEW GLOUCESTER *School Fund. vs.* WILLIAM BRADBURY.

The town of *New Gloucester*, holding lands by grant from the *Commonwealth of Massachusetts*, prior to the separation of *Maine* therefrom, for the *use of schools* in that town, deemed it advisable to have the lands sold; and on application of the town, an act was passed by the Legislature, incorporating certain persons, by the name of " The Trustees of New Gloucester Schools in the County of Cumberland" — authorising the sale, by them, of said lands — the putting of the proceeds at use — appropriating the interest annually to the support of said schools — empowering them to fill vacancies in their own board — and containing various other provisions. *Held,* that this constituted *a contract* within the meaning of the constitution of the United States and of this State; and that a subsequent act of the legislature of this State, authorising the town to choose a new set of Trustees, and directing the first Trustees to deliver over the trust property was *unconstitutional* and *void.*

THIS was an action of trover for sundry notes of hand, sundry deeds, and certain books, particularly described in the writ; and was tried upon the general issue, before *Parris J., November Term,* 1833.

It was proved or admitted, " that on the 16*th* of *June,* 1803, and for many years before, certain real estate, situate in *New Gloucester,* belonged to that town in fee, the title to which had been derived by grant from the *Commonwealth* of *Massachusetts, for the use of schools* in that town; and that from the year 1793, the same had been under the care, superintendance, and management of the town, until the year 1803; during which period, successive committees, appointed by the town, appropriated the rents and profits of the lands to the use of the schools, as originally intended.

In *May,* 1800, it was considered, by the town, advisable to have the school lands sold; and on application of the town, an act was passed by the Legislature of *Massachusetts,* on the said 16*th* of *June,* 1803, entitled " an act, authorising the sale of the school lands in the town of *New Gloucester,* to raise a fund for the support of schools in said town, and for appointing Trustees for those purposes." In the *first* section, Trustees were appointed, to sell the school lands, and to put out at interest the moneys arising from such sale, in the manner mentioned in the act. In

the *second* section, the Trustees were incorporated into a body politic, by the name of the " *Trustees of New Gloucester Schools in the County of Cumberland.*" The *third* section authorised said Trustees and their successors, annually to elect a President, Clerk, Treasurer, and other needful officers. The *fourth* section provided that the number of Trustees should not exceed seven, nor be less than five ; and authorised the Trustees to fill vacancies in their number from the inhabitants of said town ; and also to remove any of their members when unfit or incapable of discharging their duty, and to supply vacancies in the manner above mentioned. The *sixth* section authorised the Trustees to sell and convey the school lands in fee, and execute deeds of the same. The *seventh* section directed that the moneys, arising from the sale of the lands, with all donations or grants that should be made for the use of schools, should be put to use, and secured by mortgage or sufficient sureties. The *eighth* section directed that the interest arising from said fund, should be annually appropriated for the use of public schools, in said town, and that it should never be in the power of the town to alter or alienate the appropriation of the fund. The *ninth* section required the treasurer of the Trustees to give bond, faithfully to perform his duty. The *tenth* section declared that the Trustees should not be entitled to any compensation for their services, out of the moneys arising from said fund. The *eleventh* section directed the Trustees to exhibit to the town, at the annual meeting, a fair statement of their doings ; and the *twelfth* section makes the Trustees, and each of them, answerable to the town, for their personal negligence or misconduct, and liable to a suit for any loss or damage thereby occasioned.

Under the authority of the above act, the Trustees therein named and their successors, had ever since discharged the duties of their appointment ; and the defendant, who was their treasurer, had given bond as by the act was required ; and was in possession of the notes, deeds, and books, for the alleged conversion of which, this action was commenced, claiming a legal right to retain them, in virtue of his office of treasurer of the Trustees.

The plaintiffs having shown the act authorising the sale of the school lands, and the creation of a school fund, and having shown

the same in the hands and under the care and management of said
Trustees, claimed in this action a right to the fund and the docu-
ments exhibiting and securing the same.   Their claim was found-
ed on an act passed by the Legislature of this State on the second
day of *March*, 1833, in accordance with the petition of the town
and entitled as in addition to the act of *June* 16, 1803.

The act of 1833, in the first section provided as follows, *viz* :
" that the inhabitants of the town of *New Gloucester*, qualified
by law to vote in town affairs, be and they  hereby are authorised
and empowered, at their annual meetings in *March* or *April*, to
choose by ballot seven persons, inhabitants of said town, Trustees
of *New Gloucester* school fund, whose  duty  it  shall be  to take
charge of, and manage all the  property, both  personal and  real,
belonging to said fund."

The second section declared that " said Trustees shall have all
the powers and privileges which the Trustees now have in the
act to which this is additional, except their right to fill vacancies
which may happen in the board, and shall be under the same
liabilities."

The *third* section directed the present board of Trustees to
transfer and deliver over to the  Trustees elected by the  town,
within one month from the election of said Trustees, all the books,
papers, records, notes and all the property belonging to said school
fund.   The *fourth* section repealed those parts of the former act
that were inconsistent with the latter.

These were the essential provisions of the two statutes, and
the principal question in the case was, whether the act of 1833,
" was constitutional, or a violation of the rights of the Trustees un-
der the act of 1803, and an invasion of their chartered interests."

Other points than the foregoing were made in the argument,
but as the decision of the cause was placed on the ground alluded
to, the facts in relation to the former are not reported.

*Preble,* for the defendants, maintained that the act of *June*,
1803, by which the first Trustees were incorporated, was *a con-
tract,* within the meaning of the Constitution of the United States,
and of this State — and that the act of *March,* 1833, incorpo-
rating the second set of Trustees, was in violation of the first, and
therefore, was *unconstitutional* and *void.*   In support of this posi-

tion he made an elaborate argument and cited the following authorities. *Dartmouth College case,* 4 *Wheaton,* 518 ; 2 *Kent's Com.* 306; *Allen* v. *McKeen,* *Mason's Rep.* ; *Angel and Ames on Corporations,* 81 ; *Richardson* v. *Brown,* 6 *Greenl.* 355 ; *Pawlett* v. *Clark,* 9 *Cranch,* 294 ; *County of Hampshire* v. *Franklin,* 16 *Mass.* 84 ; *Brunswick* v. *Litchfield,* 2 *Greenl.* 28.

*Fessenden,* for the plaintiffs, took the following positions. 1. The whole beneficial interest in the fund, is in the inhabitants of *New Gloucester,* in their municipal character, for the use of the public schools in that town — or, in other words, they are the *cestui que trust* of the entire fund.

The Corporation was created at the instance and request of the owners of the land, from which the fund is derived — the present *cestui que trust.*

2. The Corporation is the Trustee of the fund for the use of the *cestui que trust.*

3. The Trustees or Corporation have no beneficiary interest in the fund. It is not a trust coupled with an interest. Their duties are ministerial.

4. The Corporation is not, in the strict legal sense of the term, an *elemosynary* corporation. It is not such an one as the whole public have an interest in, as in a college or an academy.

5. It is not, in the sense of the law, a private corporation, such as a bank, manufacturing company, proprietors of a bridge, or turnpike, &c.

6. It is a corporation *sui generis* — created for the purpose of being the Trustee of this fund, for the use or benefit of the inhabitants of the town of *New Gloucester,* and at their instance and request.

7. Hence the act of incorporation is not, within the meaning of the Constitution of the United States, *a contract,* either between the State and the Trustees — or between the inhabitants of *New Gloucester* and the Trustees.

8. But if it be *a contract,* it is a contract between the State and the inhabitants of *New Gloucester.* In the same sense that a conveyance made by A to B, for the use of C, is a contract between A and C, and vests at once the whole estate in the latter.

9. Hence, the Legislature has the constitutional power, by the consent and on the application of the inhabitants of the town, who are the *cestui que trust*, to change the Trustees of that fund, and appoint others, or to authorise the *cestui que trust* to choose or appoint others, without the assent, and against the will of the present Trustees.

These positions, the counsel for the plaintiffs supported and illustrated by reasoning at length, citing the following cases: *Bridgton* v. *Harrison*, 11 *Mass.* 16 ; *Special laws*, dividing the towns of *North Yarmouth* and *Falmouth*; *Cumberland* v. *North Yarmouth*, 4 *Greenl.* 459.

MELLEN C. J. — This is an action of trover for sundry notes of hand, sundry deeds, and certain books, particularly described in the writ. The question is, whether, upon the facts reported, the action can by law be maintained. The *first* objection is, that there is no such corporation as that described in the writ, and to which the defendant is called to answer. The *second* objection is, that the case presents no evidence whatever of a conversion : and the *third* objection is, that the plaintiffs have no merits or legal ground of action. In our examination of the cause, we shall reverse the order pursued by the counsel for the defendant, in the argument, and commence with an examination of the facts and principles, on which the plaintiffs place their claim to retain the verdict which has been returned in their favor. The cause is important in principle and influence, and deserves particular and careful consideration. A brief summary of the principal facts will be useful in this place, in presenting our opinion, and the grounds of it, in a clear and distinct point of view. [See preceding statement.]

The great principles collected, discussed and established in the cases of the *Trustees of Dartmouth College* v. *Woodward*, and *Allen* v. *McKean*, treasurer of Bowdoin College, have been referred to, and relied on by the counsel for the defendant, as decisive of the merits of this cause in his favor. The counsel for the plaintiff, distinctly disclaims all objections against the decision of either of those cases, *on the points arising in this case*, and, *thus far*, admits the perfect correctness of the principles on

which *both* decisions repose. But he has contended, that the case before us differs from both those in some important particulars: that it is a case *sui generis*, in respect to the character of the *quasi* corporation, with which it was connected in its origin, and afterwards in its liabilities, *viz.* the town of *New Gloucester.* Hence, our inquiries are confined to the alleged reality and legal importance of these distinctions.

In the act establishing Bowdoin College, and making provision for its first and continued organization, there is also a grant of five townships, for the use of the College and for the purposes of instruction, &c., and the seventeenth section, by which they are granted, provides that the lands, so granted, shall be vested in the trustees, with power to settle, divide, and manage the same, or sell, convey, or dispose of the same. And the sixth section provides that the clear rents, issues, and profits of all the estate, real and personal, shall be appropriated to the endowment of the College: so that they have an interest in, and control over the *personal,* as well as the *real* estate, before it is sold and converted into *personal.* Here, by *one process,* the lands passed from the Commonwealth to the Trustees, for the use of the College, in either of the forms above stated. In the case under consideration, the school lands were first granted by the Commonwealth to the town of *New Gloucester, for the use of schools* in that town, and the fee vested in the town, in trust for the purposes mentioned: and by a *second* process, many years afterwards, the estate, so vested in the town, was sold and conveyed by the Trustees named in the act of 1803, which was passed, on the application of the town, for the purpose of converting the *real estate* into a *personal fund*; and this fund, by that act, was placed under the *exclusive* management and control of the Trustees. The *Commonwealth,* the *Town,* and the *Trustees* were all parties to this arrangement, made for the better security and productiveness of the property originally granted to the town. In both cases, the property was derived from public bounty, for promoting the cause of education, and the funds produced by the property, were in the same manner, placed under the exclusive management of Trustees. Why are not the Trustees, in both cases, equally protected from legislative control or interference, if no right is reserved to

interfere, to modify, limit, or destroy their powers and privileges. In the act of 1803, no such authority is reserved to the legislature. " A corporation is defined by *Mr. Justice Blackstone,* 2 *Com.* 37, to be a franchise. To this grant or franchise, the parties are the King and the persons for whose benefit it is created, or trustees for them. Certain obligations are created, binding on both parties, the grantor and grantees. It implies, therefore, *a contract not to reassert the right to grant the franchise to another, or to impair it.* The subjects of the grant are not only privileges and immunities, but property, or which is the same thing, a capacity to acquire and hold property in perpetuity." *Judge Washington's* opinion in *Dartmouth College* case. The legislature was bound by the act of 1803, so that they could not resume any powers by them granted to the Trustees: and for the same reason, or perhaps a stronger one, why was not the town bound by its own act, in requesting the legislature to pass the act of 1803, in which the only rights reserved to the town, are, to be furnished annually by the Trustees with a fair statement of their doings; and a right of action against the Trustees, for any losses occasioned by their negligence or misconduct.

The counsel for the plaintiff contends, that though the corporation in question, is of a peculiar character, and different from those described in our law books, it still is a *public* corporation, and subject to be regulated, controlled, and directed by the government. On this point, the doctrine laid down in the case of *Dartmouth College* v. *Woodward,* seems decisive. *Marshall C. J.* in delivering the opinion of the Court, in that case, says, " Strictly speaking, *public* corporations are such only, as are founded by the government, for *public* purposes, where the *whole* interests belong to the government." — " The charter of the crown cannot make a charity more or less public, but only more permanent." He further states, that no authority exists in the government, to regulate, control, or direct a corporation or its funds, " except where the corporation is, in the *strictest sense, public ;* that is, where its *whole interests* and *franchises* are the *exclusive property and domain* of the *government itself."* Surely the case under consideration is not of such a character. The school lands, the avails of which constitute the present school fund in *New*

The Trustees of the New Gloucester School Fund *v.* William Bradbury.

*Gloucester*, were granted by *Massachusetts*, for the use of schools in that town; and for that purpose, they annually realize the amount of its interest, under the management and control of the Trustees, acting under the law of 1803, by a reduction of the sum to be raised and collected by taxation, for the support of schools in the town.   In this manner, *New Gloucester* possesses and enjoys a beneficial interest in the funds of the corporation; which brings the present case within the very language of the court, in the case of *Dartmouth College* v. *Woodward.*   By the original grant of the Commonwealth, of the lands to *New Gloucester*, the fee of the lands vested in the town, in trust for the purposes of the grant.   The sovereign power then had no further control of the *lands.*   By the act of 1803, passed by the consent, and on the application of the town, its right of managing the lands was at an end, and the right to the control of the fund, raised by the sale of the lands, was never in the *town*, but was expressly *vested* in the designated *Trustees.*   This proceeding constituted a *contract*, and, in virtue of this contract, the Trustees acquired an interest — a legal interest: they accepted their appointment, and became entitled to a compensation for their services, which the *town* was bound to pay.   But after a lapse of thirty years, during which period, the business relating to the school fund, seems to have been carefully and peaceably managed, according to the act of 1803 — the town and the Trustees enjoying their respective rights and privileges undisturbed, the legislature of this State passed the act of 1833, thereby undertaking to legislate the Trustees under the former act, at once out of office; and authorise the town to choose trustees, who were to have the same powers as the former trustees, except of filling vacancies, and ordering the former trustees to deliver all the books, papers, and property belonging to the school fund, to the Trustees named in the last act.   The object of legitimate legislation is to define, establish, and secure to all the citizens, their legal rights: but there is another kind of legislation, expressly forbidden in the 11th section of the declaration of rights, which declares that the legislature shall pass no law impairing the obligation of contracts.   The same thing is forbidden in the Constitution of the *United States.*   The act of 1833 professes to di-

*vest* those rights which *vested* under the act of 1803, and to impair and dissolve those *contracts* which were created by that act. The prominent case of *Dartmouth College* v. *Woodward,* on constitutional law, as well as *Pawlet* v. *Clark, Hampshire* v. *Franklin, Greene* v. *Brunswick,* and *Richardson* v. *Brown,* forbid such a proceeding.

There is another objection to the contemplated operation and effect of the act of 1833, grounded on the 7th condition, in the act relating to the separation of this State from *Massachusetts,* which seems to be an immovable foundation. It is in these words: " All grants of lands, *franchises, immunities, corporate or other rights,* and all contracts for, or grants of land not yet located, which have been or may be made by the said Commonwealth, before the separation of said District shall take place, and having or to have effect within the said District, shall continue in full force, after the said District shall become a separate State." The above paragraph, being part of the seventh condition, is incorporated in our Constitution.

It is an undisputed principle, that every act of the legislature, passed in due form, is presumed to be constitutional. Respect for that body requires such presumption. It is a principle equally clear, that this Court ought not, in a doubtful case, to pronounce such an act unconstitutional; it should be plainly in *violation of* constitutional requirements or restraints, and beyond the boundaries of correct legislation, to authorize the Court so to adjudge it. But when, upon patient investigation, it is ascertained to be so, we are solemnly bound, steadily to obey the requisitions of duty, by pronouncing it unconstitutional and void. In so doing, however, we may still believe that the same was enacted with the purest motives, under a full conviction that it was, in all its provisions, conformable to constitutional principles. The result to which we have been conducted by our examination of the main question in the cause, is, that the act of 1833 violates the Constitution of the United States and of this State, and therefore we are not authorised to give any operation or effect to its provisions.

Our decision on this point, renders it unnecessary for us to express any opinion as to the merits of the *first* and *second* objections made by defendant's counsel.

The verdict must be set aside and the plaintiffs called.